## In re Grand Jury Investigation of Registration Commission, etc.

*James E. Riely* and *Edward E. Russell*, for petitioner.

*L. Stauffer Oliver*, for registration commission.

*Thomas J. Mullaney* and *Alfred I. Ginsburg*, for city commissioners.

*Louis Lipschitz* and *Thomas Shiomos*, for *Victor H. Blanc*, District Attorney.

GRIFFITHS, J., March 30, 1960.—On March 9, 1960, petitioner, Harry K. Butcher, filed a petition memorializing this court to constitute the March 1960, Grand Jury as a special investigative grand jury for the reasons set forth in his petition.

On the day the petition was filed we issued a rule on the above-referred-to commissions and district attorney to show cause why the prayer of the petition should not be granted. The rule was returnable on Monday, March 14. On motion of respondents, to which petitioner did not object, we continued the matter to Wednesday, March 23, directing respondents to file answers by Monday, March 21. Upon receipt of copies of the answers, petitioner moved the court for a further continuance in order to adequately study the answers and reply thereto. The matter was continued to Friday, March 25, at which time we spent nearly four hours hearing arguments and replies by counsel for the parties.

We have since read voluminous briefs, memoranda and a supplemental memorandum submitted by the parties.

While petitioner has filed his petition in his individual name and capacity, his counsel has informed us both in their brief and at the bar of the court that petitioner is the Executive Secretary of the Committee of Seventy and that the petition was filed "on behalf of the Committee of Seventy and in the public interest." Counsel, in their supplemental memorandum, describe the Committee of Seventy as "an organization of private citizens supported only by voluntary contributions," which "does in fact investigate and report apparent violations of the Election Code to the proper authorities." Of our own information we know the members of this committee to be distinguished and highly respectable citizens in our community. A memorial received from any of our citizens would cause us to pause and reflect upon its contents. Coming from an organization of this type, which for years has devoted itself to the betterment of our people and their government, the petition gives us more than usual concern.

*The Issues Presented*

The memorial is captioned: "In re: Registration Commission, City Commissioners, and District Attorney of the City and County of Philadelphia," and its contents concern these public offices.

The averments of the memorial, or petition, recite the names of the individuals now or formerly holding these offices and how they were elected or appointed thereto. It then proceeds to state the constitutional and statutory duties imposed upon these officers and how performance of these duties are normally and properly carried out. In paragraph 12 the petition recites that "the aforesaid Registration Commissioners, City Commissioners and District Attorney in and for the City and County of Philadelphia, have wilfully failed, neglected or refused to perform adequately and properly all the aforesaid duties imposed on them by law." Thereafter many illustrations are recited pertaining to the elections of November 8, 1955, the primaries of April 24, 1956, and May 20, 1958, and the election of November 4, 1958. It avers how the activities of the Committee of Seventy have disclosed fraudulent votes in said elections, designating the number and setting forth the specific wards and election divisions, and how other election irregularities were ferreted out by the committee and the United States Attorney for the Eastern District of Pennsylvania. Further it says how this information was given to respondents who, as above noted, "wilfully failed, neglected or refused to perform" their duties, reciting the specific evidence of the same.

Paragraph 13 of the memorial reads as follows:

"Because of the aforesaid willful neglects or defaults of the Registration Commission, the City Commissioners, and the District Attorney, persons are being registered to vote without being duly advised as to penalties for perjury; apparently unqualified pros-

pective registrants are not being challenged; district registers are being turned over to election officials with the names of unqualified electors still contained in them; district registers are not adequately checked after each election and primary and numerous persons who have removed or died are not stricken from the district registers; adequate and complete instructions have not been issued for the guidance of electors and election officers; election officers are not thoroughly instructed in their duties; there is no systematic and thorough inspection of the conduct of primaries and elections; election frauds, irregularities, and violations of the Election Code are not being investigated by the City Commissioners or their appointees; there are numerous cases where Election Code violations have been referred to the District Attorney by civic agencies, the Registration Commission, and the federal government and the District Attorney has not investigated them or prosecuted the apparent offenders; in the few instances where prosecutions have been instituted by the District Attorney, these prosecutions have been preceded by an unreasonable delay during which witnesses have removed, died or disappeared and the alleged violators have been permitted to continue flouting the law."

The prayer of the memorial is as follows:

"Wherefore, in view of the fact that alleged criminal acts have been committed which seriously affect or injure the public generally; and that they are such that the ordinary process of law is inadequate to cope with or discover them; and that remedial action is required before another election occurs; and that these matters involve both public officers and the interest of the general public; and that said alleged criminal acts are of a widespread and repetitious character; and because of the fact that where unlawful balloting is permitted to continue unchecked from election to elec-

tion the votes of duly qualified electors in all parts of the City of Philadelphia are and will be subject to nullification and the votes of such duly qualified electors are and will be to this extent negated, your petitioner respectfully prays that your honorable court refer the matter herein complained of to the Grand Jury that the same may be investigated by it to the end that appropriate action may be taken by the proper public officials and against those public officials who have failed to perform their duties."

To this petition each of respondents filed responsive answers, admitting that they presently or formerly held the offices referred to and the manner in which they were elected or appointed as such. Respondents deny they willfully failed, neglected or refused to properly perform their duties, aver how in the instances referred to in the petition they in fact performed their duties and set forth their explanation of any unusual circumstances surrounding these instances.

In the supplemental memorandum of petitioner it is averred that there "was no showing" that the registration commissioners properly perform their duties and that there is a denial of "wilful neglect or defaults committed by them." In reference to the city commissioners, the memorandum states: "A superficial reading of these so-called 'instructions' (to District Election Boards) reveals at once the extent of the respondents' failure and neglect."

Concerning the answer of the district attorney, petitioner has this to say: "It is clear beyond question that the alleged investigation of the District Attorney of these voting frauds called to his attention was cursory, superficial and utterly inadequate to determine whether the alleged crimes had been committed."

At the opening of the oral argument counsel for petitioner stated the issues were: (1) "The derelic-

tion of duty of the three offices", and (2) "Investigation of the Respondents and misconduct in their office."

## The Applicable Law to the Issues

At a time in England's history, when crime and disorder were rife and went undiscovered and unpunished, Henry II, the first Plantagenet King, issued, in 1166, his famous Assize of Clarendon, which called together, upon regular intervals, freemen from each hundred and manor to be put upon their oath and required to give the names of any accused or suspected of committing any of the more serious crimes. According to Bracton, this probably was the origin of the grand jury system. The county grand jury or inquest probably did not have its origin until the reign of Edward III. In any event neither Blackstone nor Bracton ascribe to grand juries the power to investigate the conduct of public officials or matters of general public concern: 4 Blackstone's Commentaries 302; Bracton's DeCorona, cap. 1. Such development occurred later in our law: 1 Holdsworth, A History of English Law, 321.

By the year 1845, the functions and purposes of the grand jury were fairly well crystallized in our jurisprudence, its inquisitional powers having been recognized in Pennsylvania in 1791 in Addison's Reports, App. 71. In the year 1845 the case of Lloyd and Carpenter, 3 Clark 47, was decided by our quarter sessions court in Philadelphia. It has become the leading case in Pennsylvania, cited and relied upon frequently by our Supreme Court, most recently in In re Grace, Special Grand Jury Case, 397 Pa. 254 (1959).

Lloyd and Carpenter, supra, recognized that grand juries may be directed to investigate matters "of general public import". President Judge King, in that opinion, 3 Clark 59, further stated:

"The action of the courts on such occasions, rather bear on things than persons; the object being the sup-

pression of general and public evils, *affecting in their influence and operation communities rather than individuals* and therefore, more properly the subject of general than special complaint. Such as great riots that shake the social fabric, carrying error and dismay among the citizens; general public nuisances affecting the public health and comfort; multiplied and flagrant vices tending to debauch and corrupt the public morals, and the like. In such cases the courts may properly, in aid of inquiries directed by them, summon, swear, and send before the grand jury, such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offence and the offenders. *But this course is never adopted in case of ordinary crimes, charged against individuals."* (Italics supplied.)

To the same effect is McNair's Petition, 324 Pa. 48 (1936), where on page 61 Chief Justice Kephart wrote for a unanimous court:

"The investigation cannot be aimed at individuals primarily, as such, nor at the commission of ordinary crimes . . ." citing authorities.

This was quoted by Justice Bok in In re Grace, supra, page 259.

There is reason in the law for excluding from the searching and piercing eye of a grand jury, offenses alleged to have been committed by known individuals. It lies in the fundamentals of our democracy, in the establishment of civil rights with which every American is endowed. In the present Constitution of Pennsylvania, which became effective January 1, 1874, it is provided in article 1, under Declaration of Rights, sec. 8, as follows:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches

and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

And in section 9, it is further provided that:

"In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face. . . ."

By a grand jury investigation, however, accusers would appear and testify against those accused without the accused even being present, or facing and cross-examining their accusers, for a grand jury hears only the accusers and not the accused. Such is the extraordinary nature of an investigative or special grand jury, bypassing the necessity of a hearing before a magistrate and granting immunity from malicious prosecution of those appearing before it. Such an immunity would not inure to the benefit of accusers who followed the ordinary course of the law and issued a warrant before a magistrate or judge sitting as a committing magistrate.

In describing these rights to be heard before a magistrate and cross-examine one's accusers, Judge Paxson, later Chief Justice, but then a district judge, said: "These different steps in a criminal prosecution are not mere forms. They are matters of substance; they are safeguards thrown around the citizen for his protection, and which should only be dispensed with for imperative reasons": In the Matter of the Memorial of the Officers and Directors of the Citizens' Association, 8 Phila. 478, 480 (1870). In that case the memorial was from "a large body of our most respectable fellow-citizens, 'alleging' grievous public nuisances by the several Passenger Railway Companies," page 479, and seeking a grand jury investigation. Judge Paxson

held that the ordinary criminal proceedings against the companies was the proper procedure.

Judge Paxson there said, page 480:

"As a general principle, any departure from the well established rules of law regulating the commencement of criminal prosecutions is to be avoided. We do not pursue the beaten path merely because it is such, but for the reason that experience has demonstrated that course to be the safer one."

And again, at page 481:

"When parties come into court to ask us to exercise unusual powers, they ought to show that they have exhausted the usual remedies provided by law in such cases."

The present petition points accusing fingers at the named members of the registration commission, city commissioners and the district attorney. Its concluding prayer is that the court "refer the matter herein complained of to the Grand Jury that the same may be investigated by it *to the end that appropriate action may be taken by the proper public officials and against those public officials who have failed to perform their duties*." (Italics supplied.)

While it is true the memorial contains general averments of widespread and repeated criminal activities apart from accusations against the named accused, it is primarily directed at named individuals, not only in its caption, its prayers, the briefs and memoranda of the memorialist's counsel, but also by counsel's oral argument. Even in his rebuttal argument, all of which has been, under order of the court, stenographically recorded and will be filed as part of the record in the case, counsel for petitioner, after seeing the direction the argument was taking, tried to extricate himself from the force of the above conclusion. He stated that perhaps the memorial had been given the wrong cap-

tion. He further stated that petitioner was interested in cleaning up the vote fraud, that the investigation was not directed against individuals, *but concluded that the investigation of necessity had to be against public officials.*

The memorial states these officials have "wilfully failed, neglected or refused to perform adequately and properly all the aforesaid duties imposed on them by law."

The offense thus charged would be misconduct or malfeasance in office. This offense has been described as follows in Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107, 120 (1940) :

"Misconduct or malfeasance in office in its penal sense is not merely error in judgment or departure from sound discretion, but the act, omission or neglect must be wilful, corrupt and amount to a breach of duty legally required by one who has accepted public office: Commonwealth v. Brown et al., 116 Pa. Superior Ct. 1, 175 A. 748."

A more complete definition is set forth in Commonwealth v. Hubbs, 137 Pa. Superior Ct. 244, 248 (1939) :

"In cases of the class just cited the wilful failure to perform a ministerial duty comes within the common law definition of misdemeanor in public office, and it is not necessary to aver or prove that the officer acted with a corrupt, fraudulent or dishonest intent.

"But where the nature of the duty is such as to permit the exercise of *discretion*, there must be present the additional element of an evil or corrupt design to warrant conviction: Com. v. Miller, supra. 'Malfeasance in office cannot be charged except for breach of a positive statutory duty or for the performance of a discretionary act with an improper or corrupt motive: (authorities).' McNair's Petition, 324 Pa. 48, 55, 187 A. 498."

McNair's Petition, supra, page 55, places the test at "bad faith or corruption."

The duties imposed on respondents are such as to permit the exercise of discretion, and, as such, under the above cases, there must be an evil and corrupt design, or bad faith, to warrant conviction.

While we do not hold petitioner to the requirements of a bill of indictment, it is clear that mere dereliction or neglect, even if willful, is not a crime under the above cases. We have heard no argument advanced concerning alleged corruption or bad faith.

## Conclusion

While a grand jury itself, or any of its members, has no power to initiate an investigation (Lloyd and Carpenter, supra), it is just as clear that a court, on its own motion, may order such investigation, with or without a memorial from private citizens or a petition from a prosecuting attorney: McNair's Petition, supra, page 58; Commonwealth v. Hurd, 177 Pa. 481 (1896). The ground rules for such step by the court were set forth in McNair's Petition, supra, page 58, as follows:

"The power can be exercised only upon proper occasion. The grand jury is an arm of the criminal court and criminal acts alone must be the foundation of its deliberations. When a court orders an investigation it acts under its official responsibility and must answer for the step taken when it is not justified in the exercise of sound judicial discretion but is the result of an arbitrary capricious exercise of power. Lloyd & Carpenter's Case, supra."

Where a memorial, however, has been filed, we believe it proper to act on the memorial, after careful consideration of the arguments of counsel, and not, under such circumstances, to initiate an investigation under the inherent power of the court. Such proceeding would cause only confusion and would unjustifi-

ably reflect upon respondents named in the memorial, who clearly cannot be the subject of an investigation by a grand jury under the well settled authorities, above cited, that "such investigation cannot be aimed at individuals primarily": In re Grace, supra, page 259, which is the case here. Judicial power or discretion is "to be exercised in discerning the course prescribed by law; and, when it is discerned it is the duty of the court to follow it". Chief Justice Marshall in Osborn v. U. S. Bank, 9 Wheaton 738, 866 (1824).

In thus limiting ourselves to the issues presented to us, we do not, under any circumstance, condone the vote frauds which have been brought to light through the assiduousness and diligence of the Committee of Seventy and of The Evening Bulletin, a newspaper of general circulation in our community and in this area of our country. Unless such good influences were present in our midst, crime would prosper with even more rapidity. Edmund Burke once said: "All that is necessary for the triumph of evil is that good men do nothing." With the advance in development of the biological attributes of man, we seem, at the same time, woefully to lag as a civilization in the development of cultural, or moral, attributes.

One of the city commissioners, who did not take office until January 1960, has separately petitioned that his name be eliminated from these proceedings. The last election which petitioner avers is November 4, 1958, more than a year before this respondent took office. The language in Philadelphia County Grand Jury Investigation Case, 347 Pa. 316 (1943), at page 321, seems aptly appropriate here:

"It seems clear to us that commissioners who took office August 1, 1941, much less than two years before the memorial was filed, cannot possibly be charged with wilful default for the conduct of Commissioners not in office."

Because of our present disposition of the memorial now before us, this city commissioner's petition becomes moot.

In McNair's Petition, supra, page 62, the Supreme Court stated:

*"Before reflection is cast upon the integrity of public officials a preliminary investigation by the forces of law charged with the discovery of crime should be made to determine whether there is any real foundation.* Such jury investigations involve great expense to the public; subject the citizen to inconvenience and frequently interfere with the normal functioning of public officials and bodies brought before it. They throw a cloud of suspicion upon the parties subject to attack and undermine public confidence in them. There must be a sound, solid basis on which to proceed." (Italics supplied.)

In the light of the above underscored quotation, the court is reliably informed that the Attorney General of Pennsylvania is investigating the entire matter of voting frauds in our community. If, after more information is obtained, there is any "real foundation" to the accusations against these respondents, the Attorney General will surely proceed with arrests according to law. Under McNair's Petition, supra, page 63, it would appear that charges, to be tenable, must show "fraud, dishonesty, or corruption . . . in other words, bad faith. . . ." If, on the other hand, the memorialist believes there is presently sufficient evidence of criminal culpability on the part of those he has accused before this court, his proper remedy is to cause warrants of arrest to be issued by any magistrate or judge sitting as a committing magistrate.

It is equally reasonable to assume that if, in the opinion of the Attorney General, or of the district attorney, after complete information is available, there should be an investigating or special grand jury to

investigate vote frauds by ferreting out known crime among unknown persons, cause the guilty to be discovered and properly indicted, the Attorney General, or the district attorney, will petition for such in the proper court at the proper time.

For the foregoing reasons the memorial is denied and the prayers thereof dismissed.