**Specter Petition**

*Raymond Bradley* and *Jerome Richter*, for petitioners.

SLOANE, J., August 25, 1969.—Generally, the query to me directs itself to the right of a witness to have a transcript of the testimony he gave to the investigating grand jury.

Particularly, before me also, are two separate motions, by two separate lawyers for two sets of separate witnesses, for a transcript of the prior testimony of each such witness to be given to his lawyer and each such witness, for study and perusal (not with haste) before any of them may be called back to the investigating grand jury for further or additional testimony.

On Monday last, (1) such motion by one lawyer on behalf of one witness was granted and (2) the same motion by another lawyer on behalf of two other witnesses was taken for consideration. Upon request of the district attorney's office and upon my own third thought, argument and further examination was needed on the point of these motions. Beyond this, the requests for such transcripts have so multiplied that I think it ripe and to the point to make answer now. I do it here: There is to be no transcript to and for a witness or his lawyer or both, neither for one appearance before the investigating grand jury nor upon recall or reappearance of a witness.

The answer is not easy and is not easily found. See People v. Ianniello, 21 N. Y. 2d 418. But self-vexation is no solution, and solution, a moving and wrenching task, must be reached.

There is no ideal norm. The whole matter is one of balance between competing basic values. Both sides pose powerful considerations. On the one side is the firm catalogue of the rights of a witness, em-

phatically for example, the right to a lawyer, to advise the witness, consult with him, guide him, and this can be done more intelligently and adequately with the transcript before them. The witness does have his present right to confide in his lawyer, consult with him, even reveal his testimony to his lawyer after he leaves the grand jury; but without a transcript, it is not full enough. On the other side, one witness may have his transcript, every witness may have it; and if every witness has his transcript, all the testimony and all else to its full magnitude coming to and considered by the investigating grand jury is cast bare and is out. The whole procedure is laid open and with this complete release and exposure the secrecy and effectiveness of the entire proceeding of the investigating grand jury is stripped away. This would be grievous error; and any statement that each witness will narrow his trust and reliance to the one lawyer, is nothing but uncritical assumption and wishful thinking, especially with the web of relationship of one lawyer and more than one witness-client.

History is not inert knowledge.

The grand jury as a venerable institution in our country (in the realm of England it is gone) still shakes off all hard criticism of itself as a crumbled theory, and still is a "body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor." So spoke Mr. Justice Black in Costello v. United States, 350 U.S. 359, 362. See United States v. Smyth, 104 F. Supp. 283 (N.D. California).

The nature of grand jury proceedings and the secrecy surrounding them make the grand jury particularly suitable for the investigation of public evils. The inquisitional powers of the grand jury were recognized in Pennsylvania as early as 1791. See

Addison's Reports, (Pa. 1791), App. 71; McNair's Petition, 324 Pa. 48: In re: Camden County Grand Jury, 10 N.J. 23.

Federal and State courts agree that secrecy is an essential element of grand jury proceedings. The authority for the secrecy of the grand jury in Pennsylvania goes back to "The Frame of Government," an act of the provincial assembly passed in 1696; See "Charter to William Penn and Laws of the Province of Pennsylvania" (1879); Commonwealth v. Kirk, 340 Pa. 346; 141 Pa. Superior Ct. 123.

Federal and State courts agree also that the secrecy of the grand jury proceedings is not altogether for the protection of an accused or a witness. It has its own value. Secrecy serves: (1) to encourage the full expression of witnesses by affording them maximum freedom of disclosure without fear of reprisals from outsiders; (2) to prevent perjury by witnesses who come forward to controvert or reinforce other testimony of which they learn; (3) to prevent prospective defendants from escaping; (4) to prevent disclosure of investigations that result in no grand jury action; Wood v. Hughes, 9 N.Y. 2d 144; and (5) to assure the grand jury freedom from outside interference. See Commonwealth v. Kirk, supra; Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107; United States v. Amazon Industrial Chemical Corporation, 55 F. 2d 254, 261 (D.C. Md.); United States v. Smyth, 104 F. Supp. 283, 303, 304, supra; (N.D. California); Howard v. State, 60 Ga. App. 229, 236; Bennett v. Stockwell, 197 Mich. 50, 56-57; Kuh, "The Grand Jury Presentment—Foul Blow or Fair Play," 55 Columbia Law Review 1103.

The books are laden with discrete instances of the effort to open the door into the grand jury room: People v. Calandrillo, 215 N.Y.S. 2d 364; State v. Brinkley, 354 Mo. 337. There may be circumstance

and condition that warrant the lifting of the veil of secrecy. See, for example, In re Grand Jury Proceedings, 4 F. Supp. 283, E.D. Pa.; In re People ex rel. Sawpit Gymnasium, 60 N. Y. S. 2d 593. And distinctions are made between grand jury witnesses who already are accused or indicted and those who are not. See Commonwealth v. Nelson, 172 Pa. Superior Ct. 125, reversed on other grounds 377 Pa. 58; affirmed 350 U.S. 497; rehearing denied 351 U.S. 934. One further short word: If a witness is to be recalled and before he is recalled he is to have a chance with his lawyer to go over and study his prior testimony—time is consumed and delay ensues. It is fitting that the investigating grand jury go ahead perhaps not with celerity but "in the language of the English Chancery with all deliberate speed."

And so it is: There are precious postulates on both sides. I weigh them, with decision and decision, thought upon thought, and I find my final, compelling thought to be: the balance is against the open transcript. "I do not think we need trouble ourselves with the thought that my view depends upon differences of degree. The whole law does so as soon as it is civilized." Perhaps "degree of the nicest sort; and between the variations" of thinking "and the simple universality of the rules in the Twelve Tables or the Leges Barbarorum, there lies the culture of two thousand years": Mr. Justice Holmes concurring in LeRoy Fibre Company v. Chicago, Milwaukee and St. Paul Railway, 232 U.S. 340, 354.

I may err; assuredly, there is no joy in error; if there is unrest, there is ready solace in that if I err it is on the side of the Commonwealth.

Accordingly, I now enter this order:

(1) The granted motion is revoked.

(2) Both motions are denied.