Dissenting Opinion by
Montgomery, J.:
I respectfully dissent from the majority’s action in affirming the quashing of the indictments in this case.
The lower court, speaking through Hon. Theodore B. Smith, Jr., Judge, in an exhaustive opinion gave four reasons for its action in quashing the indictments, i.e., (1) the failure of the Commonwealth to have the defendants previously arrested and given a preliminary hearing before their indictment; (2) the denial to defendants of their Sixth Amendment rights to the assistance of counsel; (3) in compelling the individual defendants to appear and testify in response to a grand jury subpoena without the necessary warning mandated by Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977 (1964), under the Fifth Amendment and (4) for violation of Buies 208 and 209 of the Buies of Criminal Procedure in having a stenographer present in the grand jury room for the purpose of making a stenographic record of the testimony of witnesses. It is the third reason upon which the majority bases its decision.
The appellant, in support of the argument to reinstate the indictments, relies on Commonwealth v. MeCloskey, 433 Pa. 117, 277 A. 2d 764 (1971), cert. denied, 440 U.S. 1000, 92 S. Ct. 560(1), 30 L. ed. 2d 552 (1971), the benefit of which Judge Smith did not have when he filed his opinion on October 21, 1970.
*42 Unquestionably, McGloslcey establishes that an indictment based upon an investigating grand jury’s presentment submitted with leave of court is lawful, even though there had been no previous arrest or preliminary hearing held. The appellees have not pressed this reason in their brief.
McCloskey must also be recognized as authority for the principle that a witness summoned to appear before a grand jury is not entitled to have counsel present in the hearing room (grand jury room) or to be entitled to step outside the door and consult counsel after every question; but that he should receive a warning by the court in charge of the investigating grand jury that if he is confused or believes his answer might be incriminating, he may come before the court accompanied by counsel and be advised of his rights.
I believe that this record shows clearly that the rights of the individual defendants were carefully guarded by Hon. Joseph Sloane, an able and experiencéd jurist, who was in charge of the investigating grand jury and who on numerous occasions explained to the individual appellees, in the' presence of their counsel, Morris H. Wolff, Esq., that they should not answer any questions about which they were uncertain or which might tend to incriminate them and, further, that, if such a situation arose, they would be brought to Judge Sloane with their counsel for a determination of the propriety of the questions.
The appellees contend, however, that, since they were the targets of the investigation being conducted by the special grand jury, which they argue distinguishes this case from McCloskey, they were entitled to the additional instructions mandated by Miranda and Escobedo. The majority accepts this contention. However, even in situations where Miranda and Escobedo instructions might possibly be required, they are *43 not required during the investigating efforts of the law enforcement authorities but only after the proceedings have reached the accusatory point. In re Groban, 352 U.S. 330, 77 S. Ct. 510, 1 L. ed. 2d 376 (1957). In the present case I do not find the finger of accusation was directed at the individual appellees at the time they testified before the investigating grand jury. They were in a situation identical to that of McCloskey or of anyone else connected with the subject matter of an investigation and summoned to testify. They were both witnesses and potential defendants, the latter status depending on the outcome of the investigation and the findings of the investigating grand jury. Until they were accused by the presentment returned by that body, they were not targets or “substantially in position of criminal defendants,” as contended by appellees. Although the district attorney had previously conducted an investigation of the affairs of the Used House Program of the Philadelphia Housing Authority, during which he had interviewed the individual defendants and indicated dissatisfaction with their operations as developers, no accusations of criminal activities were made against them until the grand jury returned its seventh presentment.
The present case is readily distinguishable from Commonwealth v. Kilgallen, 379 Pa. 315, 108 A. 2d 780 (1954), and Manko Appeal, 168 Pa. Superior Ct. 177, 77 A. 2d 700 (1951), for the very good reason that the subject of the grand jury investigation out of which those cases arose was the alleged conspiracy of Kilgallen, Cross and Manko. Such is not the present situation, wherein the individual appellees were not named or in any way referred to in the petition asking the court for a special grand jury. This distinction is clearly stated in the opinion of the late Hon. W. Russell Case, President Judge of the Fayette County Com *44 mon Pleas Court in Commonwealth v. Bane, 39 Pa. D. & C. 664, 666-667 (1940), where he said: “There is, however, a basic distinction in the case of an ordinary •witness and in the case of a party accused — that is, one whose guilt or innocence in relation to a specific offense is actually being investigated in pending proceeding. The accused has not then the status of a witness only, but of a party whose conduct is the main subject of the inquiry. Any question that could be asked him relative to the inquiry must have as its object the proof of the charge against him, and must necessarily tend to that point. Therefore, he cannot be called to the stand; he cannot be asked a single question; his privilege of silence is absolute: Wigmore on Evidence (3d ed.), sec. 2268.” Appellees were not charged with crimes in the petition involved in this case. I firmly believe, therefore, that the individual defendants were merely witnesses and, although potential defendants, they were not named defendants or the targets of the investigation so as to entitle them to any instruction beyond what was given them by Judge SLOANE.
I likewise find no merit in the final reason given by the lower court for quashing the indictments. Although the appellees did not brief this point, the Commonwealth argued that Rules 208 and 209, disallowing grand jury testimony to be transcribed, are inapplicable to investigating grand juries. Although the Rules are silent on special grand jury functions, as noted in McCloskey, it would be unreasonable to assume the ability of grand jurors, without a record to refer to, to remember all the testimony given during the course of their investigation which lasted from April, 1969, until September, 1970, during which hundreds of witnesses were heard and fifteen presentments were made, recommending 2,464 indictments against 46 *45 individuals and 19 firms, including city officials and persons dealing with them, and involving a wide variety of offenses.
Furthermore, the secrecy of the grand jury proceedings is for the protection of the grand jury and the Commonwealth and should not be used for the benefit of potential defendants. Oommomvealth v. Kirk, 141 Pa. Superior Ct. 123, 14 A. 2d 914 (1940); Specter Petition, 47 Pa. D. & C. 2d 212 (1969).
Therefore, I would reverse the order of the lower court and reinstate these indictments.
Weight, P. J., and Watkins, J., join in this dissenting opinion.