Commonwealth *v.* Robinson, Appellant.

Argued April 12, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Harry Irwin Glick,* for appellant.

*Craig T. Stockdale,* Assistant District Attorney, with him *Leo J. Kelly, Jr.,* Assistant District Attorney, *Wil-*

*liam S. Rahauser,* District Attorney and *Robert Van der Voort,* for appellee.

OPINION BY ARNOLD, J., July 23, 1948:

Defendant appeals from convictions of rape and burglary.

On the night of the commission of the offenses the husband of the prosecuting witness had gone out for the evening and their two children were asleep on the second floor.

A few minutes before 11:00 P. M.[1] the prosecuting witness felt a draft and arose to see if the front door was open. She was then accosted by a strange man who demanded money. He came forward to an archway from the hall into a twelve foot square room, which was illuminated by a hundred watt electric lamp in the center of the ceiling. He was then some seven feet from the lamp and within only eighteen inches of her,[2] and this for several minutes. When he found she had no money he compelled her to enter another room and there violated her. There is no doubt that she was ravished, and the only issue was the identification of her assailant.

The police were summoned and she gave them a description and told them "about his hair line, how it went straight up in the air; and his eyes, they were set so different in his face," and that he was a light-colored Negro, taller than she, wearing a brown overcoat and a white shirt.

The next morning, at a police station, she was shown some 250 photographs, and she positively identified the picture of the perpetrator of the crimes. This was Charles Robinson. He was arrested and on the following day a line-up of some five colored men was had at the police station. In order to establish certainty one of the police officers told her that, "No. 1 is your man."

---

[1] Time fixed by radio program to which she was listening.

[2] She "could see the whole front of him in the light." The hallway itself was unlighted.

When they filed in she denied this and identified No. 2 as the man. This was the defendant, Charles Robinson. The men were taken out and brought in with their backs toward her, and each repeated the words, "I'll blow your brains out," (one of the statements made in her home). She identified the voice of Robinson although he attempted to disguise it.[3] When arrested he had a brown overcoat similar to that which her assailant wore.

No stronger identification of a previously unknown person could be made than that in this case. She identified his general appearance. She identified him from a photograph. She identified him positively on trial. She identified his peculiarities of appearance, i. e., the hair line and the eyes. In the opinion refusing a new trial the trial judge said: "The jury . . . undoubtedly were as impressed with her [prosecuting witness'] testimony as was the trial judge. No one can dispute the fact *that defendant's eyes are quaint and very unusual, and this court cannot recall one similar set of eyes in all his experience in life and this court much like the prosecutrix* [as she so testified] 'will see them forever.'" (Italics by the court below.) Her testimony was weakened in no respect. Neither judge nor jury had any doubt concerning it.

At the close of the Commonwealth's case the jury was fully warranted in finding defendant guilty, and the case could not be taken from it. There is no basis for the contention that the verdict was unwarranted by the evidence.

The defense was a denial and an alibi, and it is argued that the Commonwealth's evidence must give way

[3] Various words, over the course of several minutes, were uttered by the defendant: "This is a stick-up I want some money"; "Well, where is it?"; "When is your husband coming home?"; "Come on in here and don't make any noise or I'll blow your brains out"; "Quit trying to attract attention"; "I'll blow your brains out if you make any noise"; "If I don't get any money I always get . . . [intercourse]"; "Get undressed, hurry up"; "Now lie down on the floor"; "Come on and help"; "You stay right there."

thereto. In no criminal trial does the defendant admit his guilt, and his denial, per se, cannot call for a reversal. Many defendants offer an alibi. It is well known that because of mistake, faulty recollection or observation, or wilful fabrication, alibi testimony *of itself* does not justify setting aside a conviction. In all cases of an alibi the defendant also denies guilt, and the combination of the two defenses does not change the situation.

The alibi was not too impressive. Defendant called witnesses to show that he left a church meeting about 10:30 P. M. and went to his home. It was alleged that he next went to the store of one Martin, and returned in about five minutes with some lunch meat. That (with little apparent reason) he then telephoned his mother, went back to Martin's store, and got some ice cream to take to her,—a journey of some thirty-five minutes. On no fewer than six occasions did defendant note the exact time on a convenient clock. As the court below stated, "the alibi was almost too perfect."

The defendant's only disinterested witness was the storekeeper, Martin, a white man, who testified that defendant was in his store between 10:30 and 11.:00 P. M. He stated: "I couldn't state no positive date or no positive time for that [the purchase of the meat], but about ten minutes or so later he came back and got ice cream; . . . . [for this event] I can state a positive time because I have a little cash register back of the ice cream bar . . ., and at 10:45 every night I take the change out of . . . [that] cash register, . . . so when I close at 11:15 I have only one register to fool with, . . . I am positive that it was between 10:45 and 11:15 that that took place . . . I don't look at the clock but I can tell from the registers." He testified that he recalled that it was Tuesday, February 25, between 10:45 and 11:15 P. M. because the defendant's wife, a few days later, asked if he remembered it. All the other alibi witnesses were relatives, some of whom placed him in his own house after 11:00 P. M.

Martin's evidence does not show defendant elsewhere at the time of the offense. But since the store was a third of a mile from the locus delicti, with steep hills and icy streets intervening, it is argued that the defendant could not have walked to the prosecuting witness' house within fifteen minutes; and witnesses testified to the time required. This does not cover the time of the commission of the offense, for it assumes that the defendant *walked.* He may have obtained a ride or used a motorcycle. It is not impossible that the testimony of both Martin and of the prosecuting witness was correct. It was for the jury either to believe the alibi testimony or the evidence of positive identification by the prosecuting witness. The court would have been unjustified in taking the case from the jury.

Mrs. Edwards, mother-in-law of the defendant, was one of the alibi witnesses; in addition, she testified that she visited the prosecuting witness and told her that she had got the wrong man, and asked that the prosecution be withdrawn; and made similar requests by telephone. Mrs. Edwards and defendant's wife then alleged that the prosecuting witness said she would be happy if the defendant were proved innocent (N. T. 195),—thus casting doubt on the sincerity of her evidence on identification. In rebuttal, the prosecuting witness testified that they said to her that the defendant was innocent, and that they didn't want to have a court trial "because he had been in a little bit of trouble." This last is assigned as error. But those who seek the acquittal of defendants by attempting to influence witnesses may, of course, be exposed. It was perfectly proper for the witness whom they sought to influence to testify to their zeal and bias, and as well to discredit any of their testimony adverse to the identification by the witness: See *Commonwealth v. Quaranta,* 295 Pa. 264, 272, 145 A. 89; *Commonwealth v. Duca,* 312 Pa. 101, 108, 165 A. 825. Their statement that the defendant had been in a little bit of trouble was an additional reason why they wished to persuade her.

The defendant was fully aware of this situation from his first trial (in which he was convicted in eighteen minutes), and well knew that the same exposure would be made if these witnesses were called at the second trial. The court rightly refused defendant's motion to withdraw a juror.

The judge stated, however, that he would properly warn the jury in his charge. He forgot so to do, and made no reference to it. But this unintentional omission was not serious, for, at the conclusion of the charge, defendant's counsel was asked whether there were any additions or corrections to be made, and asked for and received an additional charge as to the degree of caution with which identification evidence should be accepted. Since the court's attention was not called to the omission, defendant could not take a chance on the verdict and then raise an exception. Cf. *Commonwealth v. Barnak*, 357 Pa. 391, 54 A. 2d 865. It is not at all clear that the court was required to say anything to the jury about this, for the whole statement was competent.

It was competent for the Commonwealth to show why the instant defendant, who was previously unknown to the prosecuting witness, was arrested. The testimony went to the original identification of the defendant by that witness. At the trial Commonwealth offered to prove that the prosecuting witness went to the identification bureau of a police station and viewed some 250 pictures in the Bertillon division, and picked out the photograph of the defendant. This occurred on the day after the offense, and the defendant was then immediately arrested. Only a general objection was made.[4] The Commonwealth had a right to show the first identification of the defendant by the prosecuting witness, whether she saw him on the street and had him arrested, or whether she saw him in a prison cell while being held for some other offense. The Commonwealth could not

---

[4] Counsel for the defendant merely repeated the offer and objected thereto.

be compelled to withhold from the jury how this previously unknown offender had been identified and arrested: Cf. *Commonwealth v. Downer*, 159 Pa. Superior Ct. 626, 49 A. 2d 516; *Commonwealth v. Bolish*, 138 Pa. Superior Ct. 598, 10 A. 2d 785.

It is urged that the admission of this evidence contravened the Act of July 3, 1947 (19 PS §711), which was an amendment to the Act of 1911, P. L. 20 [5] relating to the cross-examination of a defendant witness as to prior criminal offenses. Inter alia, it reads: ". . . no evidence shall be admitted which tends to show that the defendant has committed, or . . . been charged with, or . . . been convicted of any offense, other than the one wherewith he shall then be charged." But to the rule thus promulgated the Act makes three exceptions, the third of which is: "[Unless] The proof that he has committed or has been convicted of such other offense is *admissible evidence* as to the guilt . . . of the offense wherewith he is then charged." (Emphasis supplied). The evidence here had independent relevancy and was admissible "as to the guilt of the defendant of the offense charged" on identification. Under this third exception in the Act no evidence is rendered inadmissible in a criminal trial if it is relevant on the question of guilt, even though it does show some other offense. What is struck at is affecting the credibility of a testifying defendant by proof of some other offense. Other than that, the old rules of relevancy and admissibility as set forth in a wealth of cases such as *Hester v. Commonwealth*, 85 Pa. 139, are unaffected.[6]

---

[5] Dean Wigmore said of it that Pennsylvania "has now permitted . . . vicious legislation to slip in and thus tenderly to make it easier for astute defenders to juggle their clients out of legal danger." The amendment of 1947 is subject to even greater criticism.

[6] See "Evidence of Defendant's Character in Pennsylvania Criminal Cases" by Robert F. Banks, 96 University of Pennsylvania Law Review 853, and "Prior Convictions of a Defendant as Evidence in a Criminal Trial" by Lindley R. McClelland, 30 Erie County Legal Journal.

The evidence in this case was amply sufficient to show defendant's guilt beyond any reasonable doubt. The defendant was fully protected in all his rights. He had a fair trial and no error crept into the proceedings. The jury, the trial court and this Court all accept the proof of guilt.

The assignments of error are overruled, the judgment of the court below is affirmed, and defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.