Commonwealth *v.* Comer, Appellant et al.

Argued September 25, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*R. W. Maxwell,* with him *Waychoff, Maxwell and Waychoff,* for appellant.

*Wm. C. Porter,* First Assistant District Attorney, with him *Frank J. Docktor,* District Attorney, for appellee.

OPINION BY ARNOLD, J., November 14, 1950:

The appellant, his son, Willard E. Comer, Jr., and John Hiestand, were indicted for burglary, larceny, violation of the Uniform Firearms Act, and possession of burglary tools. Willard E. Comer, Jr., entered a plea of guilty. Comer, Sr., and Hiestand were found guilty by verdict of a jury.

During the night of January 19, 1950, Comer, Jr., and Hiestand left the city of Washington, where they lived together, and travelled by automobile to Bentleyville. They there "cased" the Moose Club and waited until the steward of the club left about 2:00 A.M. on the morning of January 20. They then returned to the city of Washington and went to the house of Willard E. Comer, Sr., who drove them in his automobile back to Bentleyville. Comer, Sr., remained in the car and the other two broke into the club, stealing money, liquor and cigarettes, which they carried out to the car. During this time they were under somewhat of a surveillance by police officers, who believed them to be professional burglars. They were caught by means of a police block of the highway, and the car was searched. It contained a bag of burglary tools, and two automatic pistols were found on the floor of the car. Comer, Jr. had in his coat pocket a short piece of dy-

namite with detonating equipment. Comer, Sr. claimed that the other two defendants came to his house at 3:00 o'clock in the morning, stating that they wanted to obtain some whiskey, and that they were so intoxicated as to be unfit to drive and therefore he drove them. He testified that he had no knowledge that they intended to commit burglary, or had burglary tools, weapons or dynamite. He admitted that he owned and operated the automobile used. Naturally the jury did not credit his version, he being an experienced criminal, as he himself testified on direct examination; and having further testified that during all of the unusual events of this early morning trip he asked no questions.

The appellant does not complain that the testimony was insufficient to sustain the verdict, and raises but two questions.

He took the stand in his own behalf, and during his *direct examination* he was interrogated about his past criminal record, which included sentences for perjury, stealing an automobile and transporting it from one state to another, and forgery of a postal money order; all of the convictions being in the State of Indiana. The defendant could not remember the number of years that he had been in penal institutions, but apparently it was more than twenty years. On direct examination he stated that for the last twelve years he had been in the grocery and produce business in the State of Indiana; that he came to Washington County to visit his wife's people some four months before the offenses charged, and that he saw a store for sale and bought it. His counsel then asked what his record had been for the last twelve years, and when he replied that it had been good, he was asked: "You have had *no trouble* in twelve years? A. No, sir." On cross-examination he was asked: "You haven't been in any trouble for the past twelve years? A. No, sir, no trouble." He was then asked: "You say you haven't been in any

trouble in the past twelve years? A. No, sir, I have never been convicted in the last twelve years."

He then testified on cross-examination that while in the grocery business at Fort Wayne, Indiana, he was arrested for vagrancy in 1945 in Warsaw, Indiana, but claimed that the case was dismissed; and that he had been arrested in Warsaw for having burglary tools in his possession (within the twelve year period). He stated that case was also dismissed, and further admitted his arrest for automobile speeding.

Appellant contends that the assistant district attorney had no right to cross-examine the defendant as to crimes for which he was only arrested and not convicted. Ordinarily that would be true, but in this case the defendant himself opened the door by testifying that he had never been in trouble during the past twelve years. He subjected himself to such cross-examination and it was proper, not for the purpose of showing his criminal conduct or reputation or prior arrests, but of determining the truth or falsity of his testimony on direct examination. The district attorney had a right to show that his statements were untrue.

The cross-examination was unaffected by the Act of 1911, P.L. 20, 19 PS §711. Cf. *Commonwealth v. Robinson,* 163 Pa. Superior Ct. 16, 60 A. 2d 824. The cross-examination in question went in without objection of any kind, and it was twenty-four hours later before the defendant moved to strike it out and to withdraw a juror. Normally, responsive replies to questions to which no objection has been made cannot be stricken out: *Commonwealth v. Retacco et al.,* 82 Pa. Superior Ct. 79. Furthermore, when the motion was made the jury was instructed to treat the alleged dismissals of the prior offenses as an adjudication that the defendant was not guilty of the offenses charged, and also to disregard entirely anything concerning mere arrests. The

case did not come under the Act of 1911 and the cross-examination was proper.

The appellant also complains that the assistant district attorney in his argument to the jury referred to Comer, Sr. as a thief, and that the court erred in refusing his motion to withdraw a juror. The court instructed the jury to disregard the remark. Comer, Sr. in the past had been a thief, however nasty such a word may be. His son pleaded guilty to being a thief, and at trial Hiestand admitted that he had participated in the burglary in question, and the consequent larceny. While it might have been in better taste for the assistant district attorney not to have used such language, the defendant was certainly not prejudiced. It played no real part in the verdict, and to grant a new trial would be an injustice: Cf. *Commonwealth v. Wilcox*, 112 Pa. Superior Ct. 240, 170 A. 455, 316 Pa. 129, 173 A. 653.

There is no merit in these appeals and the respective judgments are affirmed.