## Commonwealth *v.* Burger, Appellant.

176

Submitted April 13, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Elwood C. Burger,* appellant, in propria persona.

*Fremont J. McKenrick,* Assistant District Attorney, and *Ferdinand F. Bionaz,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 15, 1961:

The judgments of sentence entered in the Court of Oyer and Terminer of Cambria County, Pennsylvania, are affirmed on those portions of the opinion of Judge MCDONALD, for the court below, which relate to the questions raised on appeal, and which are set forth hereafter, with a footnote added by this Court:

"Defendant was tried and found guilty of burglary upon three separate indictments. He filed motions for a new trial and in arrest of judgment, which have been argued before the court en banc.

"Indictments Nos. 25 and 26 December Sessions, 1959, charge him with burglary on May 28, 1959, at Ebensburg, Cambria County, of automobiles owned by David Rudolph and William P. White. Certain items of personal property such as an electric razor, suit case and blanket were taken from White's automobile and a card case containing motor vehicle registration cards from the Rudolph automobile. Indictment No. 27 December Sessions, 1959, charges burglary on July 3, 1959, of a building occupied by the offices of Karl Byers Insurance Agency. Taken from this building, in addition to currency and stamps, were blank personal checks with the names 'Karl W. and Anna E. Byers' printed on each and blank drafts of the American-Associated Insurance Companies used by Mr. Byers in the settlement of small insurance claims.

"On June 8, 1959, an attempted armed robbery took place at 'The Music Room,' State College, Centre County. Edward Blackhurst, a clerk at the store, identified defendant as the robber. When Blackhurst re-

sisted defendant a scuffle ensued and after he fled, a card case containing several of David Rudolph's cards was found on the floor.

"From July 6 to August 17, checks and drafts taken from the Byers Agency began to appear at various stores in Allegheny County. The drafts were made payable to 'David Rudolph' and in each instance cashed by defendant who identified himself by that name. Several of the items purchased with the checks and drafts were found in his house at the time of his arrest.

"One of the drafts was offered to Nicholas Hornick, proprietor of the Burke Auto Store in Johnstown, Cambria County, in payment for tires. As in other instances, the defendant identified himself as 'David Rudolph' and produced an automobile registration card in that name. Hornick was suspicious and asked him to wait while he called the bank. While Hornick was calling, defendant left. The check and registration card were turned over to the police.

"Edwin H. Fearon, a handwriting expert, after comparing the signatures on the checks and drafts with specimen of defendant's handwriting, testified that in his opinion defendant had signed the instruments.

"The Commonwealth relied almost entirely on circumstantial evidence to prove the crimes charged. The net of circumstances was securely woven around defendant by capable and exhaustive investigation by the police.

"The testimony of the Commonwealth witnesses disclosed a cleverly executed operation which involved the use of the automobile registration cards taken from the Rudolph automobile to aid in passing the checks and drafts stolen from the Byers office. The identification of defendant as the possessor of these items was positive and unequivocal in all cases. He was connected to the instruments by his handwriting. At the

time of his arrest, he was in possession of goods purchased with the forged instruments as well as those stolen from White's automobile.

"After a full and complete charge by the trial judge, to which no objection is made, the jury found defendant guilty upon all indictments. In our opinion the evidence was sufficient to sustain the verdicts and the trial without error. . . .

"3. Defendant contends the trial judge erred in permitting evidence of other crimes allegedly committed by him.

"To prove the crimes charged, it was necessary to produce evidence which connected defendant with crimes committed in other jurisdictions. For instance, the checks and drafts stolen from the Byers office were cashed after having been fraudulently executed and endorsed. The cashing of these checks was implemented by use of the motor vehicle identification cards taken from the automobile of David Rudolph. The defendant was 'positively' identified by several witnesses as the person who cashed the checks and represented himself to be David Rudolph. There was expert testimony he had forged the signatures. The testimony of the attempted robbery of Mr. Blackhurst was used for the purpose of identifying defendant as the party who dropped the Rudolph card case and identification cards during a scuffle.

"It was not the purpose of this evidence to show a 'pattern of crime' as defendant contends, but rather to identify him as the possessor of property taken during the burglaries for which he was tried. This was carefully explained to the jury by the trial judge: . . .

"This testimony was admitted under an exception to the general rule that proof of independent and separate crimes is inadmissible. Where evidence tends to aid in identifying the accused as the person who committed a particular crime under investigation and trial,

it is admissible even though it tends to show he is guilty of other crimes for which he is not on trial. Shaffner v. Commonwealth, 72 Pa. 60; 20 Am. Jur., section 312, page 292; Commonwealth v. Robinson, 163 Pa. Superior Ct. 16; Commonwealth v. Biacone, 175 Pa. Superior Ct. 6. Since there were no eye witnesses to the burglaries charged, it was necessary for the Commonwealth to identify defendant as the possessor of recently stolen goods. Proof of possession of the drafts and checks taken from Byers and the registration cards taken from Rudolph was a necessary and logical connecting link to those crimes for which he was being tried, even though it also tended to show an attempted robbery in Centre County and forgeries in Allegheny and Cambria Counties. We are satisfied under the theory of the Commonwealth case and the rules of evidence, this testimony was admissible.

"The defendant also argues the proof of identity was not sufficient. This was a jury question and the trial judge instructed it . . . in accordance with the rules set forth in Commonwealth v. Kloiber, 378 Pa. 412, and Commonwealth v. Trignani, 185 Pa. Superior Ct. 332.

"4. Defendant contends he was proceeded against by 'witnesses and evidence' upon which he was not given a preliminary hearing. The 'Transcript of Docket' of Elizabeth C. Roland, Justice of the Peace, before whom informations were made by Trooper Pfadt, indicates: that on September 1, 1959, the defendant appeared before the Justice of the Peace for a hearing and entered a plea of not guilty; Pfadt was sworn and testified; on the basis of this testimony defendant was held to answer the charges. It was only necessary for the Commonwealth to show a prima facie case, Commonwealth ex rel. Scolio v. Hess, 149 Pa. Superior Ct. 371. The defendant is not entitled, at a preliminary hearing, to be confronted with all the Commonwealth witnesses and evidence. He may obtain information by

a bill of particulars, Commonwealth v. Hershman, 171 Pa. Superior Ct. 134; Commonwealth v. O'Brien, 181 Pa. Superior Ct. 382. No such application was here made.

"5. Defendant argues the court erred in permitting the introduction of 'the defendant's monthly Parole Reports and the Parole Officer into the case during trial before a jury.' While Ralph Hess, a parole officer, was called as a witness and identified certain reports submitted to the Parole Board by defendant, a parolee, they were not admitted into evidence.

"The Commonwealth attempted to introduce through Mr. Hess, copies of the defendant's monthly written parole reports for the purpose of comparing the handwriting on those reports with handwriting on the checks and drafts stolen from Byers. The trial judge believed the Commonwealth could procure other specimens of defendant's handwriting, notably the indictments which had been endorsed by him, therefore, the offer was refused. The colloquy relating to the purpose of the offer was carried on at side bar.

"The offer appeared to be proper as an exception to the general rule excluding evidence of prior crimes, since it was proposed to prove identity of defendant in the crimes charged. However, since the Commonwealth failed to show other specimens of defendant's handwriting were unavailable, the trial judge, in his discretion, properly excluded the reports.

"We are of the opinion the mere identification of the parole officer as a witness and the parole reports without more, did not prejudice the defendant. In fact, he had previously revealed his parole status in cross-examination of Mr. Blackhurst . . ., and later while examining Trooper Pfadt he elicited information that a certain picture used in the investigation was taken upon his release from Rockview Penitentiary . . . .

"When identification is at issue, the courts have relaxed the rule making inadmissible evidence which tends to show the commission of prior crimes. In the case of Commonwealth v. Robinson, supra, defendant was identified from a bertillon photograph taken at a prior arrest; and in Commonwealth v. Biancone, supra, identification of defendant was made by a prisoner who knew him at the time of his incarceration for another crime. . . .

"8. Defendant contends the trial judge erred in 'permitting false testifying and open conspiracy to be continued' by Trooper Pfadt (the prosecutor), the District Attorney 'willingly being a party to this procedure.' His brief indicates this is an attack on credibility. Pfadt testified fully and completely to those results of his investigation which were admissible. Defendant had ample opportunity to cross-examine him and, in our opinion, did so capably and extensively. Pfadt's credibility and that of all witnesses was decided by the jury after a fair and complete charge (to which no objection is made) covering credibility as well as all other relevant issues. It is absurd to say the presentation of Commonwealth testimony, otherwise admissible, indicates 'open conspiracy' because adverse to the defendant. . . .

"10. Defendant contends the court erred in 'not postponing or adjourning proceedings until defense witnesses could be made available.'

"At no time prior to or during the three days of trial did he make any effort to secure a subpoena for witnesses. At the conclusion of the Commonwealth case and after the court had ruled on his demurrers, he asked a 'postponement' for the purpose of calling witnesses. The trial judge requested that he submit the names of all witnesses whom he desired to call. He gave the names of three witnesses . . . who resided in Altoona, a distance of twenty-eight (28) miles. When,

at the direction of the trial judge, telephone calls were made to these, it was determined one was unavailable, but two would appear. The first of these to appear was interviewed by defendant, but not called as a witness.[1] . . .

"We fail to see what more could have been done to insure the defendant of his right to call witnesses in his behalf.

"This defendant was convicted in a fair and impartial trial. He was permitted every opportunity to defend himself, although in doing so, the trial was unduly extended to twice the time it would have required had he been represented by counsel. At no time did the trial judge urge that he expedite his case, although a member of the bar would probably have been reprimanded had he conducted himself as did the defendant.

"He was carefully and fully advised of trial procedures by the trial judge. In fact, on several occasions he was called to side bar and cautioned that asking certain questions might prejudice his case.

"We are satisfied the reasons he has offered in support of his motions for a new trial and in arrest of judgment are without merit and therefore, the motions must be dismissed."

Judgments of sentence are affirmed.

_____

[1] Defendant then waived the right to call any other witnesses (N.T. 177, 178)