## Commonwealth v. Burton

*William J. Stevens, Jr.,* for Commonwealth.
*Eugene H. Clarke, Jr.,* for defendant.

SPAETH, J., September 3, 1971.—Defendant is before the court on two matters: a motion to quash the indictments, and an application and supplemental application for a writ of habeas corpus.

## STATEMENT OF THE CASE

On August 29, 1970, in Fairmount Park near Sixty-third Street and Cobbs Creek Parkway, Philadelphia, one police officer was shot and wounded and another shot and killed. In the ensuing investigation the police questioned and obtained signed statements from Marie Williams and Jerry Joyner. Mrs. Williams gave two statements, one on August 30 and another on September 2nd. Mr. Joyner gave one statement, on August 30th. The gist of the statements was that some five or six persons, including Mrs. Williams' husband, Mr. Joyner's brothers Alvin and Robert, and defendant, had met at the Williams home and had discussed killing policemen, and that the day after the attacks in Fairmount Park one of this group had said that in fact they had shot one officer, who had not died, and another, who had died. In addition, other evidence was assembled; for example, certain guns and hand grenades were recovered, and statements were obtained with respect to the time and place of each attack.

A criminal complaint was issued charging defendant with murder, assault with intent to kill, conspiracy, possession of explosives, and various weapons offenses. On September 23rd, defendant appeared before The Hon. William Markert for a preliminary hearing.[1] After various witnesses had testified as to the time and place of the attacks and the cause of the

---

[1] The preliminary arraignment was on September 1; the preliminary hearing was first set for September 9, and then for September 16, but each time was continued.

one officer's death, the Commonwealth called Mrs. Williams. She, however, declined to testify on the ground that she might incriminate herself. Thereupon the hearing was continued to October 7th.

On September 24th, defendant's counsel filed an application for a writ of habeas corpus, contending, correctly, that the Commonwealth had failed to make out a *prima facie* case against defendant.[2] No stay of proceedings was obtained incident to the application. Nevertheless, on October 7th the continued preliminary hearing was not resumed, and on November 9th the application for a writ of habeas corpus was called for hearing before The Hon. John R. Meade, sitting in the Miscellaneous Division of the Criminal Court. On the Commonwealth's representation that it was endeavoring to obtain immunity for Mrs. Williams, the hearing was continued.

On November 12th and 13th, after hearing, Mrs. Williams was granted immunity by The Honorable D. Donald Jamieson, President Judge, and on November 17th the preliminary hearing was resumed before Municipal Court Judge Markert.

After several police witnesses had testified, Mrs. Williams was again called to testify. After she had testified that one Russell Schotes had brought a hand grenade to her house, she was asked whether various persons, including defendant, had met at her house and whether she had heard defendant "talk about killing pigs." She was evasive about whether there had been a meeting, and denied hearing defendant talk about killing pigs. Thereupon she was questioned about her statements of August 30th and September

---

[2] Paragraph 7 of the application: "There was no evidence presented which connected the accused with having been involved in any crime."

2nd to the police. This was done in a rather disorganized manner so that it is not always clear from the transcript when she is being asked about the first statement and when about the second. However, it seems fair to summarize her testimony as amounting to an admission that she did sign at least one if not both of the statements, this admission being qualified, however, by a repudiation of the statements as false. The detective who took the second statement was then called. He read the statement into the record, identifying Mrs. Williams' signature to it, and testified that it was as given by Mrs. Williams (N.T. 69).[3] Among other matters, the statement included a statement that there had been a meeting in Mrs. Williams' house, attended by defendant, where there was talk about "[k]illing pigs and eliminating pigs."

The next witness was Mr. Joyner. His testimony was extremely contradictory. This is not surprising, for although the assistant district attorney said to Mr. Joyner that "[your] testimony could only be used against [defendant] and . . . not against [your brothers] Alvin . . . or Robert . . . or any of the others," it is plain that Mr. Joyner was not persuaded that this was the case, for he replied, "They are my brothers, I am not going to go against my brothers" (id.), adding, a moment later, "I can't look at you because I'm crying."

At first Mr. Joyner either said something contrary to the statement he gave the police (as, for example, with respect to whether he had seen his brother Alvin shortly before the attacks) or said that he did not

---

[3] At N.T. 68 the statement is identified as taken on September 31st; this appears to be an error for September 2nd (cf. N.T. 62).

remember something that appeared in the statement with respect to when he had seen defendant. Thereupon the assistant district attorney requested and was granted a recess, during which he was permitted to question Mr. Joyner in private. When the hearing resumed, the assistant district attorney questioned Mr. Joyner as on cross-examination. Although this was done without application or explanation, it may be assumed that the assistant district attorney was surprised at Mr. Joyner's testimony and regarded him as having become a hostile witness.

It is impossible to summarize the testimony that ensued. Sometimes Mr. Joyner simply did not answer a question. Sometimes he said, "I take the Fifth Amendment." Sometimes he said he did not know or did not remember something that appeared in his statement. (E.g., cf. N.T. 98 with N.T. 130, 132, with respect to whether and when he had seen his brother Alvin in a certain blue Dodge.) Sometimes he said he had not said to the detective something that appeared in his statement. (E.g., cf. N.T. 104 with N.T. 130, with respect to whether his brother Alvin had said that he and three others, including defendant, "were going to move on some pigs.") He acknowledged that he had signed the statement and was familiar with its contents, adding, however, that he had only given the statement after the police had beaten him and "forced him." Upon being asked, "Is this true, Mr. Joyner?", he replied, "Yes, well, they beat me to death, they halfway beat me to death, my whole left side, I ain't too good on my left side." When asked, "You're saying all of those statements in this statement are untrue?", he replied, "Yes, I am, after they beat me up they made me say them." A moment later, when asked, "Now, did you make all these things up?", he replied, "No, I didn't make them up," follow-

ing this, nonresponsively, with, "That statement is false," whereupon he was asked questions evidently designed to show that he nevertheless must have told the detective what appeared in the statement:

"Q. Does your brother own two pairs of wranglers?

"A. Yes.

"Q. Did he own a banlon with blue and white stripes?

"A. I think.

"Q. And an Army jacket?

"A. Yes.

"Q. Now, that's in the statement here, right?

"A. No reply."

After Mr. Joyner had testified, the Commonwealth called the detective who had taken Mr. Joyner's statement. He denied that Mr. Joyner had been beaten or otherwise forced to give the statement, and read the statement into evidence. Thereupon the Commonwealth rested, and defendant was bound over for indictment on all of the charges against him.

On December 15th, defendant's counsel filed a supplemental application for a writ of habeas corpus, contending that the statements that Mrs. Williams and Mr. Joyner had given the police should only have been received for impeachment purposes, and that with the record thus limited, the Commonwealth had again failed to make out a *prima facie* case.[4] The supplemental application was set for hearing on December 21st. Although again no stay of proceedings was requested, the assistant district attorney who had prosecuted the case at the preliminary hearing understood the contention of defendant's counsel and had

---

[4] Paragraph 4 of the supplemental application: "There was no legally admissible evidence presented at that hearing to connect the applicant with any involvement with any crime."

agreed that no indictments against defendant would be presented to the grand jury unless, after argument, the contention was dismissed by Judge Meade. Because the notes of the preliminary hearing had not been transcribed, and because Judge Meade became ill, the supplemental application was not heard on December 21st. On December 22nd, another assistant district attorney presented indictments against defendant to the grand jury, and the indictments were approved. On January 13, 1971, defendant moved to quash the indictments. The motion came before this court, and with it came the application and supplemental application for a writ of habeas corpus. Argument having been heard, and briefs received, the last on July 20th, the motion and applications may now be decided.

## Discussion

### 1. *Defendant's motion to quash the indictments*

If the indictments are regarded as having been properly presented to the grand jury, defendant's application and supplemental application for a writ of habeas corpus must be dismissed, as defendant's counsel concedes. However, the indictments were not properly presented, for the presentation was in violation of the understanding between defendant's counsel and the assistant district attorney who had prosecuted the case at the preliminary hearing. The fact that defendant's counsel had not obtained a stay of proceedings is immaterial; counsel is entitled to rely upon opposing counsel's word. Equally immaterial is the fact that the assistant district attorney who presented the indictment to the grand jury was no doubt unaware of the understanding between his colleague and defendant's counsel. What

one assistant district attorney has agreed to binds another assistant district attorney. Accordingly, having been assured that Judge Meade has no objection, the court will proceed to consider defendant's application and supplemental application for a writ of habeas corpus as though no indictments had been approved. If the applications have merit, the indictments will be quashed and a writ of habeas corpus will issue; if the applications are without merit, no writ will issue and the indictments will not be quashed.

## 2. *Defendant's application and supplemental application for a writ of habeas corpus*

As has been indicated in stating the case, defendant's argument is that a writ of habeas corpus should issue because without the statements of Mrs. Williams and Mr. Joyner, the Commonwealth did not make out a *prima facie* case. There are three premises to this argument. The first, as the Commonwealth concedes, is correct: the testimony of the witnesses other than Mrs. Williams and Mr. Joyner did not make out a *prima facie* case; what requires discussion is whether the remaining two are correct: that the statements that Mrs. Williams and Mr. Joyner gave the police should be classified as "prior inconsistent statements;" and that as such they were available to the Commonwealth at the preliminary hearing for the purpose of impeaching Mrs. Williams and Mr. Joyner, but not, as Municipal Court Judge Markert evidently regarded them, as substantive evidence of the charges against defendant.

### a) *Should the statements by Mrs. Williams and Mr. Joyner be classified as "prior inconsistent statements"?*

It is plain that Mrs. Williams' statements to the police should be classified as prior to and inconsistent

with her testimony; as more fully discussed in stating the case, although she admitted that she had signed the statements, her testimony cannot be reconciled with the statements, and she repudiated the statements as false. With respect to Mr. Joyner's statement to the police, however, the matter is by no means so plain.

If trial counsel anticipates that a witness will testify in a manner inconsistent with a prior statement, there is a stratagem available to him:

"If the turncoat's prior statement was in writing, it can be presented to him before the conflict between it and his present story is high-lighted; and if he is asked whether his signed statement is true, he will naturally often state that it is. If he does, the prior statement is thereby incorporated in his present testimony and may be used substantively even though the witness later tells a contrary story. [Footnote containing citations omitted.] This merely creates a conflict, and the jury is entitled to base its finding on either of the conflicting stories."[5]

It may be that Mr. Joyner's testimony was considered by Municipal Court Judge Markert in this manner. As more fully discussed in stating the case, Mr. Joyner did at one point repudiate his statement as "false"; however, at another point, when asked, "Is this true, Mr. Joyner"?, he replied, "Yes," then going on to say that the police had beaten the statement out of him. In evaluating this testimony, the judge may have decided to accept the first part of it, that the statement to the police was true, and to reject the second part, that the police had beaten the witness.

---

[5] McCormick, The Turncoat Witness: Previous Statements not Usable as Substantive Evidence of the Facts Stated, 25 Tex. L. Rev. 573 at 575 (1947), citing Zimberg v. United States, 142 F.2d 132 (1st Cir. 1944), and Stewart v. Baltimore & Ohio R. Co., 137 F.2d 527 (2d Cir. 1943).

There is basis in the record for such an appraisal. The interrogating detective testified that Mr. Joyner was not beaten; and the statement is so full and in such detail that one might find that it was based on personal knowledge.

It may be granted that in the cases cited by Dean McCormick, supra, the witness, so far as appears from the opinions, at least, gave no such qualified response as did Mr. Joyner, rather admitting without qualification that the prior statement was true, while nevertheless testifying in a manner inconsistent with the statement. However, no reason appears why this should be an important distinction. If, as did Mr. Joyner, a witness acknowledges that a prior written statement is true, that would appear sufficient to incorporate the statement as part of his testimony; the fact that the witness adds that he was beaten seems irrelevant, unless he also claims, which Mr. Joyner did not, at least, not clearly, that to avoid further beating he said anything, even though it was not true; and the fact that the witness retracts his earlier acknowledgement that the statement is true and says that it is false would only seem to create a conflict that the fact finder will have to resolve.

Upon this view of Mr. Joyner's statement and testimony, further consideration is unnecessary, for even without Mrs. Williams' statements, with Mr. Joyner's statement admitted as substantive evidence, the Commonwealth made out a *prima facie* case against defendant. The court has concluded, however, that it should rest its decision upon a broader ground, for there is no indication that Municipal Court Judge Markert distinguished between the effect to be given Mrs. Williams' statements as compared to Mr. Joyner's statement. So far as can be determined from the record, it would appear that the judge did not

distinguish between the statements but received all of them as substantive evidence.[6]

### b) If Mrs. Williams' statements and Mr. Joyner's statement are classified as "prior inconsistent statements," were they nevertheless admissible as substantive evidence?

It may be granted that were this court reviewing the record of a trial, it would be obliged to apply the rule that a prior inconsistent statement, when offered against a witness not a party to the litigation, may be used only for the impeachment of the witness and not as substantive evidence of the matter in issue.[7]

---

[6] In this connection it may be observed that so far as the transcript of the preliminary hearing reveals, defendant's counsel did not argue that Mrs. Williams' statements and Mr. Joyner's statement should be admitted only for impeachment, simply noting a general objection to the reaching of the second of Mrs. Williams' statements, and objecting to the reading of Mr. Joyner's statement only on the ground that it had not been shown that defendant "was present and heard the statement." At least as regards Mr. Joyner's statement, the objection appears based on a theory other than now argued, for whether defendant was present and heard the statement was irrelevant to its use as substantive evidence; his silence could not turn the statement into an admission by him: Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904 (1967). Thus it might be held that any objection to the use of Mr. Joyner's statement as substantive evidence had been waived. Cf. Bizich v. Sears, Roebuck & Co., 391 Pa. 640, 645, 139 A.2d 663, 666 (1958). However, as defendant's counsel's earlier argument, when objecting to Mrs. Williams' statement, was not transcribed, the court prefers not to rest its decision on this ground.

[7] See, e.g., Dincher v. Great A. & P. Tea Co., 356 Pa. 151, 156, 51 A.2d 710, 713 (1947); Commonwealth v. Deitrick, 221 Pa. 7, 16, 70 A. 275, 278 (1908); Selden v. Metropolitan Life Insurance Co., 157 Pa. Superior Ct. 500, 507-08, 43 A.2d 571, 576 (1945). See also Commonwealth v.

The question, however, is whether this is so when the court is reviewing the record not of a trial but of a preliminary hearing.

### (i) *The argument in favor of conducting a preliminary hearing under the same rules of evidence as apply at trial* ·

The provisions of the Pennsylvania Rules of Criminal Procedure with respect to a preliminary hearing are stated in considerable detail: Pa. R. Crim. P. 119, et seq. A defendant at preliminary arraignment before an issuing authority must be informed of his right to a preliminary hearing: Pa. R. Crim. P. 119(a)(2). If a preliminary hearing is not waived under the rules, the issuing authority must "[f]ix a day and hour for a preliminary hearing . . ." and "[g]ive the defendant notice [of the hearing]": Pa. R. Crim. P. 119(f)(1), (2). Defendant must be present at the hearing, unless provided otherwise by the rules, and "if he desires: (1) [b]e represented by counsel . . . (2) [c]ross-examine witnesses and inspect physical evidence . . . (3) [t]estify, call witnesses . . . and offer other evidence in his own behalf [as limited by the rule] . . . and (4) [m]ake [a record] of the proceedings": Pa. R. Crim. P. 120(b)(1-4). It is provided further that "[a] defendant, charged with a capital offense, shall have the right to have counsel assigned to represent him at the preliminary hearing": Pa. R. Crim. P. 120(d). The detail of these provisions

---

Commander, 436 Pa. 532, 542, n., 260 A.2d 773, 778 n. (1970), collecting cases, but declining to consider whether the rule should be changed. Cf. United States v. Small, et al., 443 F.2d 497 (3d Cir. 1971), collecting authorities in favor of changing the rule but holding that the trial court was bound by Bridges v. Wixon, 326 U.S. 135, 153-54 (1945), which applied the rule.

gives weight to the argument that a preliminary hearing is of more than minimum importance to the administration of criminal justice in Pennsylvania.

The importance of the preliminary hearing to the defense of an accused was discussed in Coleman et al. v. Alabama, 399 U.S. 1 (1970). There, in deciding that the hearing was a "critical stage" in the criminal justice process requiring the presence of counsel, Mr. Justice Brennan for the court listed four functions that the hearing could serve for a defendant:

"First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." Id. at 9.

It is true that the importance of the preliminary hearing will vary from case to case; but it is equally true that in appropriate cases the benefits derived by an accused may be substantial. The court in Coleman v. Alabama, supra, held that a preliminary hearing was not a procedure that must be provided as a constitutional right; however, the court did emphasize the importance of the hearing and its critical nature when afforded to a defendant.

It can be argued, both from the detail of the Pennsyl-

vania Rules of Criminal Procedure and from the reasoning of Coleman v. Alabama, supra, that the nature of the preliminary hearing is such as to require that the same rules of evidence be applied as at trial. Otherwise, a court may be confronted with the anomaly of binding an accused over for trial on evidence that cannot be properly introduced at the trial.

There seem to be no Pennsylvania cases that directly discuss and answer the questions suggested by this possibility. However, one court did comment upon the nature of the evidence to be presented at the preliminary hearing. In Commonwealth ex rel. Scolio v. Hess, 149 Pa. Superior Ct. 371, 27 A.2d 705 (1942), in affirming the decision of the lower court, holding that no *prima facie* case had been made out at the preliminary hearing and discharging relator, the court stated:

"We do not mean to hold that on a hearing before a committing magistrate . . . the Commonwealth must produce evidence of such character and quantum of proof as to require a finding . . . of . . . guilt . . . . It should be such that if presented at the trial in court, *and accepted as true,* the judge would be warranted in allowing the case to go to the jury." Id. at 374-75, 27 A.2d at 707.

This seems to imply that the evidence at the preliminary hearing should be admissible "if presented at the trial," and is consistent with the references in the Rules of Criminal Procedure that seem to incorporate basic trial procedures into the preliminary hearing, such as references to representation by counsel, notice and appearance, presentation of evidence, testimony of witnesses, cross-examination of witnesses, and recordation of the proceedings: Pa. R. Crim. P. 119, et seq.

The court is aware that the preliminary hearing "is not a trial in any sense of the word [and] . . . does not purport or attempt to determine the guilt or innocence

of the accused": Commonwealth ex rel. Maisenhelder v. Rundle, 414 Pa. 11, 15-16, 198 A.2d 565, 567 (1964). However, control of the nature of the evidence by well-established rules will not transform the hearing into a trial any more than does the presence of counsel, the examination and cross-examination of witnesses, or the presentation of other evidence.

(ii) *The argument that the rules of evidence that apply at trial should not apply at a preliminary hearing*

Although the Rules of Criminal Procedure may be read as implying that the rules of evidence that apply at trial should apply at a preliminary hearing, they may also be read, perhaps just as easily, as implying the opposite.[8] Nowhere in the rules is there language declaring that the rules of evidence do apply at the preliminary hearing. The negative implication that therefore the rules of evidence do not apply is strengthened by a consideration of the explicit detail of the rules governing the preliminary hearing. An omission in such a detailed scheme is, arguably, an expression of intent that the omitted matter is not pertinent. It should be noted in further support of this reading of the rules, that, until recently, Municipal Court judges did not have to be members of the bar, and many such judges unschooled in the law preside over preliminary hearings. It would be impractical and unfair to require lay judges to apply technical rules of evidence at preliminary hearings.

Such a reading of the rules would appear not to be in conflict with Coleman v. Alabama, supra, for there, as has been noted, while discussing the critical nature of the hearing and its importance to the accused, and while requiring that counsel be present at a preliminary hearing when held, the court also made it plain that States

---

[8] Perhaps this ambiguity should be considered by the Procedural Rules Committee.

are free not to provide for any preliminary hearing in their rules. If a State may deny a preliminary hearing altogether, it would seem that it could grant one limited in effectiveness from defendant's point of view by the fact that the rules of evidence were inapplicable.

The Pennsylvania Supreme Court has viewed the preliminary hearing as serving a rather limited function. In Commonwealth ex rel. Maisenhelder, supra, the court stated:

"The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a *crime which was never committed*, or for a crime with which there is *no evidence* of his connection. It is not a trial in any sense of the word. It does not purport or attempt to determine the guilt or innocence of the accused, nor is he *required to speak, plead or offer testimony in defense*." Id. at 15-16, 198 A.2d at 567 (Italics supplied.)[9]

The most recent statements by the court regarding the function of a preliminary hearing appear in Commonwealth v. McCloskey, 443 Pa. 117, 277 A.2d 764 (1971).

In McCloskey one of the issues was whether a defendant whose indictment had been recommended by the presentment of an investigating grand jury was entitled before being indicted to a preliminary hearing. This court held that he was, and one of its reasons was the conclusion that there might be a violation of the equal protection clause of the Fourteenth Amendment if a defendant whose indictment

---

[9] The court held that petitioner was not denied his constitutional guarantees when he was not represented by counsel at the preliminary hearing. In this respect the holding has been overruled by Coleman v. Alabama, supra.

was recommended by a presentment could be indicted without a preliminary hearing, while a defendant arrested upon a complaint could not be indicted without a preliminary hearing. The Supreme Court, however, reversed, finding that the protections afforded a defendant by the one procedure did not substantially differ from those afforded by the other. Said the court:

"Having reviewed in depth the nature and characteristics of an investigating grand jury, we believe it serves identifiable and legitimate state interests. We cannot agree that the omission of a preliminary hearing for a defendant indicted pursuant to a presentment, when the extraordinary and limited circumstances [footnote omitted] justifying the impaneling of an investigating grand jury existed, in any way prejudices him, or denies him a greater degree of protection than is available to a defendant in a criminal proceeding instituted by complaint and preliminary hearing. In comparing the safeguards afforded by these alternative procedures, we must turn again to the Rules of Criminal Procedure.

"Rule 119 [footnote omitted; Rule 120 of the present Rules] lists four rights of an accused at a preliminary hearing: assistance of counsel, cross-examination of witnesses and inspection of physical evidence, giving of testimony and recording the proceedings at his own expense.

"We deal with the right to counsel in Section III of this opinion and accordingly defer a discussion of that subject.

"As to recording the proceedings, a record was made of the special grand jury investigation here involved. Each witness is entitled to his own testimony. Furthermore, should any of the other evidence before the investigating grand jury be material to the impeachment of Commonwealth witnesses at trial,

we will not presuppose that the trial court would not adequately protect any rights a defendant might have to utilize such evidence. [Footnote omitted.]

"Likewise, the other preliminary hearing advantages allegedly denied defendants are illusory. In Commonwealth v. Dessus, 423 Pa. 177, 181, 224 A.2d 188, 191 (1966), we held that an indictment based solely on hearsay testimony was valid. That being the case, an accused's opportunity to cross-examine at a preliminary hearing is severely restricted. We believe that the policy considerations justifying the impaneling of a special investigating grand jury when ordinary law enforcement procedures are no longer capable of dealing with the problem as outlined above justifies this 'curtailment,' if indeed it is one, of an accused's cross-examination opportunity. Cf. California v. Green, 399 U.S. 149, 90 S. Ct. 1930 (1970).

"Additionally, in view of the limited quantum of evidence necessary to bind a defendant over, and a defendant's opportunity to testify on his own behalf, we believe any disclosure benefits available to a defendant in a preliminary hearing through the availability of inspecting the minimum if any, amount of physical evidence introduced by the Commonwealth are more than adequately balanced in the context of an indictment arising out of a grand jury investigation. In the latter situation, a defendant has the entire presentment as a basis upon which to prepare for trial as well as the right to request a bill of particulars under Rule 221. As the record now before us discloses, a presentment is a rather complete summary of the grounds on which the investigating grand jury is making its recommendation, and includes descriptions of both the physical evidence and testimony that prompts its action.

"It has been urged by various appellees that the proper procedure required by both the criminal rules and considerations of equal protection is that subsequent to the investigating grand jury presentment, a complaint should be issued and preliminary hearing held before the matter is submitted to an indicting grand jury. To accede to appellee's request would merely be subjecting the administration of criminal justice to another superfluous layer of delay and imposing an unwise burden upon our judicial process as well as upon the prosecutor and counsel for the defense with only a slight expectation for what at most would be a highly speculative *de minimus* [sic] advantage to an accused.

"We reiterate that an investigating grand jury is an arm of the court, in this Commonwealth is judicially supervised from its inception contrary to the practice in most jurisdictions and is strictly regulated in the scope of its inquiry. The rights of an accused will certainly be as well protected before an investigating grand jury as during a preliminary hearing. Both are conducted before persons not necessarily schooled in the law. At least in the investigating grand jury context, the procedure is subject to supervision by a court." Id. at 137-39, 277 A.2d at 774-75.

It is impossible to read this passage without receiving the impression that a preliminary hearing is perhaps not the sort of proceeding that many members of the criminal bar have supposed. To be sure, it has long been settled that at a preliminary hearing the Commonwealth need only make out a *prima facie* case, and that in doing so it need not call all its witnesses or present all its evidence: Commonwealth v. Burger, 195 Pa. Superior Ct. 175, 171 A.2d 599 (1961); Commonwealth ex rel. Scolio v. Hess, *supra.* However, it seems to have been assumed, as defen-

dant's counsel in the present case has assumed, that so far as concerns the witnesses that the Commonwealth does choose to call at the preliminary hearing, the rules of evidence apply. It may be that in McCloskey the court is intimating that this assumption is unwarranted.

Certainly it is vigorous language to refer to the advantages of a preliminary hearing, as seen from a defendant's point of view, as "illusory." Many trial lawyers and judges, no doubt including members of the court, have seen such advantages prove decisive.[10] Nevertheless, the fact that defense counsel have realized advantages from preliminary hearings conducted in the manner of trials does not mean that they are entitled to retain those advantages. Not all jurisdictions have preliminary hearings; and Coleman v. Alabama, supra, has now established that there is no constitutional right to a preliminary hearing. Moreover, there is currently considerable general discussion, by members of both the bench and the bar, with respect to the possible desirability of re-examining the procedures by which criminal cases are initiated and prosecuted. Perhaps it will be decided

---

[10] The most notable example in this court's experience was in Commonwealth v. Delehanty, Phila. Ct. of Q.S. Bill No. 1206, November Sessions, 1965, where the Commonwealth sought a verdict of guilty of first degree murder. At the preliminary hearing, one of the Commonwealth's expert witnesses had answered a question regarding her qualifications in such a manner as to suggest to defense counsel a line of investigation the result of which was that at the trial the Commonwealth was obliged to withdraw the witness from the stand as a confessed perjurer. Without doubt, this played an important part in the jury's decision to return a verdict of not guilty. The impact of the exposure of this witness is still being felt. See Commonwealth v. Mount, 443 Pa. 245, 279 A.2d 143 (1971).

that many cases should proceed from summons to trial, with neither a preliminary hearing nor an indictment intervening; or perhaps other changes will be thought wise or at least worth trying. The fact that the court in McCloskey chose to characterize the advantages of a preliminary hearing as "illusory" suggests that it has already begun to reexamine the function of a preliminary hearing in the criminal process. Particularly does this appear so in light of the court's citation of Commonwealth v. Dessus, 423 Pa. 177, 181, 224 A.2d 188, 191 (1966), where, said the court, "we held that an indictment based solely on hearsay testimony was valid," Commonwealth v. McCloskey, supra at 138, 277 A.2d at 775, and of California v. Green, 399 U.S. 149 (1970), where it was said that "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied": 399 U.S. at 156, footnote omitted. In this connection also to be noted is the court's impatience with what it regarded as "another superfluous layer of delay . . . and an unwise burden upon our judicial process": Commonwealth v. McCloskey, supra at 139, 277 A.2d at 775.

In addition to these general considerations, the court's logic in McCloskey suggests that it does not regard a preliminary hearing as so important that it must be conducted in accordance with the same rules of evidence as are applicable at a trial. It will be recalled that in the passage quoted above the court stated that "[t]he rights of an accused will certainly be as well protected before an investigating grand jury as during a preliminary hearing": Commonwealth v. McCloskey, supra at 139, 277 A.2d at 775. An accused indicted upon the presentment of an investigating grand jury has not been able to listen

to, much less cross-examine, the witnesses who may have testified against him before the investigating grand jury; he does not know whether those witnesses were examined, or their testimony received, in accordance with the rules of evidence; and, as occurred in McCloskey, his indictment, based as it is on the presentment, is based on hearsay alone. If an accused is entitled to no greater protection than this at a preliminary hearing, it would seem that there could be no objection at the preliminary hearing if he were bound over on hearsay alone.

At this point, however, a difficult complication is to be noted. In the slip opinion in McCloskey, filed May 31, 1971, at page 21, the following appeared:

"The rights of an accused will certainly be as well protected before an investigating grand jury as during a preliminary hearing. Both are conducted before persons not necessarily schooled in the law, *and hearsay evidence can serve as the basis for the presentment as well as the binding over at a preliminary hearing.*" (Italics supplied.)

It will be observed, from what has been said, that not only is this consistent with the court's characterization of the advantages of a preliminary hearing as "illusory" and with its citation of Commonwealth v. Dessus and California v. Green, but that it is also a logical corollary of the court's reasoning. Indeed, it would appear to make decision in the present case relatively simple: if a defendant may be bound over on the basis of hearsay evidence, trial rules of evidence need not be applied at the preliminary hearing and defendant here cannot object to the use as substantive evidence of the statements given the police by Mrs. Williams and Mr. Joyner. The difficult complication is that when the slip opinion was reported in the Advance Reports of July 30, 1971, the clause

underlined above was omitted; thus the opinion was left with no direct statement that "hearsay evidence. can serve as the basis for . . . the binding over at a preliminary hearing."

In these circumstances decision on what weight to give McCloskey is difficult. On the one hand, both the tone and logic of the opinion are persuasive that the court intended that hearsay evidence should be admissible at a preliminary hearing. On the other hand, the fact that the court withdrew its initial statement to that effect can only make one suspect that one has in some way misunderstood the court's opinion. If the initial statement had never been included, the logic and tone of the opinion would be adequate to support the proposition that the rules of evidence need not apply to a preliminary hearing. However, the court's patent refusal to make the statement deprives the opinion of most of its force as precedent on the question now before this court.

(iii) *The arguments on either side are evenly balanced; therefore, the issue should be decided according to general principles of fairness.*

It must be acknowledged that either of the two results that have been discussed might be defended. It might be said that although the court in McCloskey had to consider the nature of a preliminary hearing, it had to do so only in a general way, and that therefore what it said is not dispositive of so narrow an issue as is presented in the present case. And perhaps this is so; certainly McCloskey can be read as leaving intact the assumption that so far as concerns whatever witnesses the Commonwealth does call at a preliminary hearing, the rules of evidence are to be as strictly applied as at trial and the sufficiency of the record appraised accordingly. However, if a musical analogy may be resorted to, such a

result, while a possible modulation, would strike the ear as somewhat forced. Or, to return to legal terminology, had the court in McCloskey regarded a preliminary hearing as a proceeding at which the rules of evidence are to be so strictly applied, it seems likely that it would have found an equal protection problem; as it did not find such a problem, one cannot help but suspect that the court in the course of its analysis contemplated that at a preliminary hearing some degree of relaxation of the rules of evidence is permissible; how much relaxation the court did not have to say, leaving that to be developed in future cases, of which the present case may be one.

With the arguments so evenly balanced, and without clear precedent, this court must depend upon general principles of fairness, which in the present case means inquiring whether defendant would suffer any injustice if the statements by Mrs. Williams and Mr. Joyner were regarded as substantive evidence, or, to put it another way, whether the admission of the statements for substantive purposes would violate sound principles of the rules of evidence.

It is Dean McCormick's view that the statements should be regarded as admissible, even at trial, as substantive evidence. See McCormick, The Turncoat Witness: Previous Statements as Substantive Evidence, in 25 Tex. L. Rev., supra, at 586-88. In expressing this view he was following the English Evidence Act of 1938 and the Model Code of Evidence, as well as "our greatest scholar in this field," id. at 576 n.7, who has said:

"The only ground [for limiting a prior inconsistent statement to impeachment] would be the hearsay rule. But the theory of the hearsay rule is that an extrajudicial statement is rejected because it was

made out of court by an absent person not subject to cross-examination. . . . Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve."[11]

In recognition of the force of this reasoning, the Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F.R.D. 315, at 413, Rule 801, provides in part:

"(d) . . . A statement is not hearsay if (1) . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (i) inconsistent with his testimony. . . ."[12]

This court is not free to depart from the "orthodox view" adhered to, as has been seen,[13] by the Pennsylvania Supreme and Superior Courts, that at trial a witness' prior inconsistent statement may be admitted for impeachment only. However, this court does regard itself as free to hold that so far as concerns a preliminary hearing, the rule should be that when, as in the present case, the statement is in writing and signed by the witness, and the witness testifies and is subject to cross-examination by defendant's counsel, the statement is admissible for substantive purposes.

This holding is in accord with the reasoning of

---

[11] 3A Wigmore, Evidence §1018(b) (Chadbourn rev. 1970).

[12] Cited in United States v. Small, 443 F. 2d 497 at 499 n. 7 (3d Cir. 1971).

[13] See p. 12, supra; see also the collection of cases by Wigmore, supra.

Wigmore and McCormick, more persuasive in this court's view than the reasoning in support of the orthodox view, at least when applied to a preliminary hearing, limited as it is to determining whether a defendant should be bound over, as compared to a trial's definitive determination of guilt beyond a reasonable doubt. It is important, however, to emphasize that the holding is a narrow one.

Suppose that the present case were a rape case, and that defendant had been bound over on the testimony of a detective who had read into the record at the preliminary hearing a statement that he had obtained from the prosecutrix, who did not appear at the hearing. This court does not read McCloskey as sanctioning such a procedure, and assumes that defendant would be entitled to a writ of habeas corpus on the ground that because the Commonwealth had relied on hearsay evidence, it had failed to make out a *prima facie* case. Cf. Commonwealth ex rel. Scolio v. Hess, supra. However, it does not follow, under Wigmore's and McCormick's analysis, that in the present case the Commonwealth has similarly failed to make out a *prima facie* case. The reason it does not follow is that in the rape case, defendant would have been bound over on the most objectionable form of hearsay, whereas in the present case, where each of the prior inconsistent statements was in writing and signed by the witness, and where the witness was subject to cross-examination by defendant's counsel, either the statement was not hearsay at all, or it was the least objectionable form of hearsay.

In a recent case the Pennsylvania Supreme Court had to consider, ". . . whether, in the particular circumstances of this case, the admission of certain hearsay testimony pursuant to a long recognized

exception to the hearsay rule violated appellant's right of confrontation . . .": Commonwealth v. Thomas, 443 Pa. 234, 235, 279 A.2d 20, 21 (1971).

In deciding that no violation had occurred the court by Mr. Justice Roberts stated:

"[The Court is aware that confrontation of witnesses is a fundamental right]. However, there are clearly different kinds of hearsay testimony possessed of varying degrees of prejudice. While the hearsay rule and the confrontation clause '. . . are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete. . . . Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. . . . The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been 'denied.' " [citing] California v. Green, 399 U.S. 149, 155-56, 90 S. Ct. 1930, 1933-34 (1970) (footnote and citations omitted).[14] Id. at 239-40, 279 A.2d at 23.

Comparably, in the present case the admission of Mrs. Williams' and Mr. Joyner's statements as substantive evidence against defendant, although technically the statements may have been hearsay, was not prejudicial to defendant. Indeed, this is sufficiently evident that the admission might have been upheld apart from McCloskey. By the admission defendant was deprived of none of the advantages that he was entitled to derive from the preliminary

---

[14] Here the court cited by footnote various sources dealing with hearsay rules and the confrontation clause.

hearing, however those advantages may be characterized, whether as real or illusory. This may be seen by comparing the facts of the present case to the enumeration by Mr. Justice Brennan in Coleman v. Alabama, supra at 9, which has been quoted above.[15] Thus, defendant's counsel was able to examine Mrs. Williams and Mr. Joyner; he will be enabled to use their testimony at the preliminary hearing to impeach them at the trial should they testify against defendant; and he was enabled to discover a great deal with respect to the case against defendant.

### ORDER

And now, September 3, 1971, defendant's application and supplemental application for a writ of habeas corpus and his motion to quash the indictments are denied.

---

[15] See p. 276, supra.